AO 91 (Rev. 11/11) Criminal Complaint



U.S. Bank Kely (312) 886-9083

**FILED**

4/2/2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

DARRICK ROSS

CASE NUMBER:

**21 CR 205**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about July 15, 2019, at Matteson, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, 2113(a) | By intimidation, took from the person and presence of bank employees approximately $2,007 in money belonging to, and in the care, custody, control, management, and possession of robbery of the U.S. Bank located at 4350 Lincoln Highway, Matteson, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation |

This criminal complaint is based upon these facts:

 X  Continued on the attached sheet.

_____
KAROLINA Z. MAZUR
Special Agent, Federal Bureau of Investigation
(FBI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: April 2, 2021

_____
*Judge's signature*

City and state: Chicago, Illinois

SUSAN E. COX, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, KAROLINA Z. MAZUR, being duly sworn, state as follows:

1.     I am a Special Agent with the Federal Bureau of Investigation.  I have been so employed since approximately February 2015.  As part of my duties as an FBI Special Agent, I investigate criminal violations relating to violent crimes, including bank robbery.

2.     This affidavit is submitted in support of a criminal complaint alleging that DARRICK ROSS ("ROSS") committed bank robbery, in violation of Title 18, United States Code, 2113(a).  Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging ROSS with bank robbery, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3.     This affidavit is based on my personal knowledge, observations, and actions, witness interviews, information provided to me by other law enforcement agents, my own experience and training, and the experience of other agents with whom I work.

## FACTS ESTABLISHING PROBABLE CAUSE

4.      In summary, on or about July 15, 2019, ROSS robbed the U.S. Bank located at 4350 Lincoln Highway in Matteson, Illinois, in violation of Title 18, United States Code, Section 2113(a) (the "**Subject Offense**"). Below, I outline the facts surrounding the **Subject Offense** and the evidence obtained through this investigation that is sufficient for establishing probable cause to believe that ROSS committed the **Subject Offense**.

**A.      July 15, 2019 Robbery of U.S. Bank**

5.      According to the bank's surveillance video of the robbery, at approximately on July 15, 2019, at approximately 4:14 p.m., an African-American male wearing a black hat, sunglasses, a black shirt with grey and white lettering, and carrying a satchel bag (the "robber") entered the U.S. Bank located at 4350 Lincoln Highway in Matteson, Illinois.

6.      Teller A, a teller at the U.S. Bank, told law enforcement that an African-American male slowly approached her teller counter. Teller A greeted him by saying, in effect, "Hello, how are you?" The robber did not answer Teller A's question and presented a demand note to Teller A with his left hand. The robber kept his right hand on a bag he was carrying. Teller A could not recall the content of the entire demand note but recalled that the note stated, in effect, "Remain calm. Give me 100's and 50's." Teller A gave the robber United States currency out of her teller drawer.

7.      The robber took the money from Teller A, placed the money into his bag, and left the bank with the money and the demand note. Teller A watched the robber

exit the bank through its front doors, walk through the parking lot, and veer out of sight.

8.      Teller A described the robber to law enforcement as an African-American male with very dark skin, in his 30's, approximately 6'0" tall with an average build.  Teller A stated that the robber wore a dark ball cap, sunglasses with frosted frames and black lenses, a black t-shirt with a white or silver design on the front, and said he carried a black satchel bag across his chest that had a zipper and a flap on top.

9.      According to an audit conducted by U.S. Bank, the total loss incurred by the bank as a result of the robbery was approximately $2,007.

10.     According to records from the Federal Deposit Insurance Corporation, the bank's deposits were insured by the FDIC at the time of the robbery.

**B.      Identification of ROSS as the Robber**

11.     On July 20, 2019, law enforcement arrested David Jennings ("Jennings") after he attempted to rob the Town Center Bank in Frankfort, Illinois. On November 26, 2019, the grand jury returned a superseding indictment charging Jennings with multiple bank robbery offenses. *United States v. Jennings*, 19 CR 594 (N.D. Ill.), Dkt. 31.  Jennings has not been charged with the **Subject Offense**.

12.     On the date of Jennings' July 20, 2019, arrest, law enforcement seized Jennings' cellular telephone (the "Jennings Phone"). On September 23, 2019, the FBI executed a search warrant for the Jennings Phone.  During the search, telephone number 708-674-3471 (the "3471 number") was found in the Jennings Phone under

3

the contact name of "ROSS." Telephone number 312-590-1445 (the "1445 number") was located in the Jennings Phone's contact list under the name "BOSS ROSS."

13. Subscriber records for the 3471 number state that it was subscribed to Individual A. Subscriber records for the 1455 number state that it was subscribed to Darrick Ross at an address on West 79th Street in Chicago. The subscriber opened the account for the 1455 number on July 15, 2019, at 7:50 p.m., approximately three hours after the U.S. Bank robbery, and the account was canceled on or about August 26, 2020.

14. The FBI performed a database check for a person named Darrick Ross with the Illinois Secretary of State. The Illinois Secretary of State's records reflect that ROSS had an Illinois driver's license and the registration address for the license was on South Morgan Street in Chicago.

15. I have compared ROSS's driver's license photograph to surveillance video images of the U.S. Bank robbery, and I believe that ROSS resembles the person who committed the **Subject Offense**. ROSS appears to have the same complexion

and the same shape of face and nose as the robber. ROSS's driver's license image and a still image of the U.S. Bank robbery are depicted below.

 

Driver's license photograph    Still image of U.S. Bank robbery

16.     In addition, on October 30, 2019, the FBI showed a photographic array to Teller A that contained six photographs, one of which was the Illinois driver's license photograph of ROSS. The photograph of ROSS was the third photograph in the array ("Photograph 3"). The line-up was administered by a "Blind Officer," who had not seen any bank surveillance images of the bank robber and did not know ROSS's position in the photographic array. Teller A was shown all of the photographs in the array.     Teller A stated "no" to each photograph except in response to Photograph 3, when she stated, "I don't think so."

17.     Victim A then reviewed the photographic array for a second time. Victim A stated "no" to each photograph except for Photograph 3. After reviewing Photograph 3, Teller A stated, "kinda looks like him from the nose down and his complexion is the same." Teller A stated she was 80 percent certain that ROSS, the person depicted in Photograph 3, was the bank robber.

18.     On August 15, 2020, law enforcement interviewed Individual A. Individual A told the FBI that he/she previously owned the telephone using the 3471 number and gave the phone to ROSS.   Individual A could not recall when he/she gave ROSS the phone.  Individual A has known ROSS since approximately 2016 and stated that he is a family friend.   Individual A also told law enforcement that he/she saw ROSS and Jennings socializing together during the summer of 2019.

C.          **ROSS's April 1, 2021, Arrest and His Confession to Committing the Subject Offense**

19.     On or about April 1, 2021, the FBI arrested ROSS on an outstanding arrest warrant for an unrelated case pending in the Circuit Court of Cook County, Illinois.  The FBI transported ROSS to the Evergreen Park Police Department.  At the police station, the FBI conducted an audio-video recorded interview of ROSS.  At the beginning of the interview, the FBI advised ROSS of his *Miranda* rights, which ROSS stated he understood.  ROSS also signed a written *Miranda* waiver form.

20.     After ROSS signed the *Miranda* waiver, law enforcement asked ROSS questions about the bank robbery and told ROSS that two people stated that ROSS and Jennings knew each other.  ROSS denied any involvement in the **Subject Offense** and denied knowing Jennings.  A law enforcement officer stated, "We waited two years to make sure that we had everything lined up.  We wanted to make sure 100% that it was you in that picture.  We didn't just come out of nowhere.  That's why

we waited."[1] ROSS stated, in effect, "Well I want to talk to a lawyer then and I don't want to answer no more questions till I talk to a lawyer. If you all got me . . . . talk to a lawyer then," and he stated that he would not answer any questions. ROSS also said, "How is somebody else gonna put me with somebody gonna tell you that I with somebody. That's so crazy." Law enforcement responded, "Not at the bank robbery. Just that you knew him. I know that you're lying to me that you know who this [Jennings] is." ROSS responded, "I don't know who that is," and "you gonna make me know somebody that I don't know."

21.     Law enforcement asked whether ROSS wanted to answer any additional questions, and ROSS responded, "No. I don't. I really don't. You're trying to actually tell me that I robbed a bank. Come on bro." Law enforcement stated, "It is what it is. Robbing a bank is never smart."

22.     Law enforcement then stated, "Sit tight. You're gonna stay here for a little bit and then I'm going to call the U.S. Attorney's Office, just to let you know what the process is. So I think you will stay here for a while, I'm gonna step out call the U.S. Attorney, I think we are going to, I may have to type up a complaint and get you charged federally. I don't know if this happens now or whatever there is a whole lot of routine we have to work out and then you may be transported to the MCC downtown. So that's the federal Bureau of Prisons holding and you'll sit tight there

---

[1]     The language that is quoted from the recorded conversations throughout is based upon law enforcement's preliminary review, not final interpretations, of the recorded conversations.

while the whole federal court process goes. I don't know where we're at. Again, I got to step out and call the U.S. Attorney and we'll go from there."

23.     ROSS asked, "Okay alright what you all talking about? What you talking about?" Law enforcement said, "I told you everything." A second law enforcement officer then stated, "We just wanted to get exactly what happened, you know maybe what I mean, get a reason. This is not a violent crime. That's the only reason why we wanted to sit down and talk to you like a man. We're not like you said we never intended. . . ." ROSS then injected, "So what what would happen?"

24.     The conversation continued as follows:

| | |
|---|---|
| LE OFFICER 1: | Hang on. First off, I know you've asked for an attorney. So I kind of have to make sure you want to continue to talk. |
| ROSS: | I'm talking to you. |
| LE OFFICER 1: | I'll talk to you. |
| ROSS: | Before we go any further, before I go through the process, anything, I wanna hear my what's my options? |
| LE OFFICER 1: | So, hang on. Let's just clarify this real quick. You did ask for an attorney. Would you still like to continue to talk, talk to us. I'll answer any questions that you've got but I've got to make sure it's clear that you want to speak to me without an attorney, and I'm not going to answer any questions but I'll tell you as much of the process as I know, but if you want to have a conversation about something I want it to be clear so that down the road. |
| ROSS: | Okay what's going to happen to me? |
| LE OFFICER 1: | That's what you want you know? |

| | |
|---|---|
| ROSS: | Yeah. |
| LE OFFICER 2: | He actually wants to know his options. |
| LE OFFICER 1: | Do you want to know your options or what's gonna happen. |
| ROSS: | I want to know the options. |
| LE OFFICER 1: | So you're fine speaking to me now without a lawyer. |
| ROSS: | Right. |
| LE OFFICER 1: | You're okay with that. |
| ROSS: | Yes I am. |
| LE OFFICER 1: | Again, I just want to make sure that's clear. |
| ROSS: | Yes, yes, that's clear. I need a cigarette. |
| LE OFFICER 1: | Either way I'll get you a cigarette before we're done, whether you talk to me or you don't. |

25.     ROSS continued to speak with law enforcement and denied his participation in the bank robbery or that he knew Jennings. Approximately 50 minutes after ROSS signed the *Miranda* waiver, law enforcement and ROSS took a about a ten minute break to allow ROSS to smoke a cigarette.

26.     Law enforcement escorted ROSS to the sally port of the Evergreen Park Police Department and gave him a cigarette. Law enforcement's conversation with ROSS while they were in the sally port was audio and video recorded on law enforcement's body-worn cameras. After the FBI escorted ROSS back to the interview room, the FBI reminded ROSS that he had previously been advised of his *Miranda* rights. Law enforcement stated, "Just because you had mentioned an

9

attorney earlier when we first started, are you willing to keep talking?" ROSS responded, "Yes."

27.     ROSS subsequently told law enforcement that he robbed a bank that law enforcement identified as the U.S. Bank in Matteson, Illinois. Law enforcement displayed still images of the U.S. Bank's surveillance footage of the bank robbery, and ROSS stated that he was the robber depicted in those photographs.

28.     ROSS also stated the following: Two banks were robbed on the date of the **Subject Offense**. That day, ROSS and Jennings traveled together in Jennings' vehicle. ROSS did not know Jennings' last name and had known Jennings for about a week. Jennings got out of his vehicle and robbed a bank.[2] ROSS did not recall the name of the bank but said it was located in the suburbs. After robbing the first bank, Jennings drove to another bank, identified by law enforcement as U.S. Bank, and gave ROSS a demand note. Jennings asked that ROSS enter the bank and rob it. ROSS said that he entered the bank and presented the demand note to the bank teller. After ROSS presented the demand note, ROSS took money from the teller and left the bank.

29.     ROSS told law enforcement that he gave the bank robbery proceeds to Jennings. Jennings gave ROSS $1,000 of those proceeds and drove ROSS to a bus stop. Jennings subsequently contacted ROSS to solicit ROSS's involvement in another bank robbery but ROSS did not participate.

---

[2]     Jennings has been charged with the July 15, 2019, robbery of the First Secure Bank in Oak Forest in Case No. 19 CR 594. According to a review of Google maps, the First Secure Bank and the U.S. Bank are located within ten miles of each other.

## CONCLUSION

30.    Based on the foregoing facts, I respectfully submit that there is probable cause to believe that, on or about July 15, 2019, DARRICK ROSS, by intimidation, took from the person and presence of bank employees money belonging to, and in the care, custody, control, management, and possession of U.S. Bank, located at 4350 Lincoln Highway, Matteson, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a).

FURTHER AFFIANT SAYETH NOT.

_____
KAROLINA Z. MAZUR
Special    Agent,    Federal    Bureau    of
Investigation


SWORN TO AND AFFIRMED by telephone on April 2, 2021

_____
Honorable SUSAN E. COX
United States Magistrate Judge

11